# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH TORRES A.,[1]<br>Plaintiff,<br>v.<br>LELAND DUDEK, Acting Commissioner of Social Security,[2]<br>Defendant. | Case No. 5:24-cv-00427-PD<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AGENCY DECISION AND REMANDING** |

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income Benefits ("SSI"). For the reasons stated below, the decision of the Administrative Law Judge is reversed, and the Court remands this matter on an open record for further proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management.

[2] Leland Dudek became the Acting Commissioner of Social Security on February 18, 2025, and is substituted as Defendant in this suit. *See* 42 U.S.C. § 405(g).

## I. Pertinent Procedural History and Disputed Issue

In a September 26, 2013 determination, Plaintiff was found disabled beginning June 1, 2010. [Administrative Record ("AR") 84.] On May 4, 2017, the Commissioner found that he was no longer disabled as of May 1 of that year. [Id.] On July 20, 2021, Plaintiff filed new applications for DIB and SSI, alleging that he had been unable to work since November 18, 2020 [AR 299, 320], because of depression, "[a]phelotic [sic]," diabetes, seizures, insomnia, and "[o]ptisum [sic]." [AR 326.]

After his most recent applications were denied initially [AR 147-48] and on reconsideration [AR 209-10], he requested a hearing before an Administrative Law Judge [AR 225]. A hearing was held on February 1, 2023, at which Plaintiff, represented by counsel, testified, as did a vocational expert. [AR 42-80.] In a written decision issued May 31, 2023, the ALJ found him not disabled. [AR 17-35.]

Specifically, the ALJ found that under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), Plaintiff had rebutted the presumption of continuing nondisability by showing a "changed circumstance affecting the issue of disability." [AR 17.] She found "new and material evidence related to findings concerning whether [Plaintiff] ha[d] an impairment or combination of impairments that [were] severe, and regarding [Plaintiff's] residual functional capacity." [AR 18.] Accordingly, she "d[id] not adopt all such findings from the final decision on the prior claim in determining whether [Plaintiff] [was] disabled with respect to the unadjudicated period." [Id.] She then followed the requisite five-step sequential evaluation process to assess whether he was disabled under the Social Security Act ("SSA"). *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (as amended), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485 (9th Cir. 2022); 20

2

C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 18, 2020, the alleged onset date. [AR 20.] His date last insured was September 30, 2022. [Id.]

At step two, the ALJ determined that Plaintiff had severe impairments of "insulin-dependent diabetes mellitus," seizures, depression, anxiety, attention deficit hyperactivity disorder, and "possible learning disability versus possible intellectual disability." [Id.] She concluded that his carpal-tunnel syndrome was not severe because it did "not significantly limit the ability to perform basic work activities." [Id.] His alleged autism was not a medically determinable impairment because the record lacked "objective medical signs or laboratory findings from an acceptable medical source." [AR 22; see AR 22-23.]

At step three, she found that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. [AR 23-24.]

At step four, she determined that he had the RFC to perform light work except that he could

> occasionally lift, carry, push or pull up to 20[]lbs, 10[]lbs or less frequently; stand and/or walk 6 out of 8 hours and sit 6 out of 8 hours. Frequent balance, frequent all other postural activities except no climbing ladders, ropes or scaffolds. No work at unprotected heights or on dangerous moving machinery or other hazards such as open bodies of water. Frequent fine and gross manipulation bilaterally. He can understand, remember and carry out simple routine tasks for up to 2 hours [sic] periods of time with occasional interaction with the general public. There should be minimal changes in workplace setting or routine. No fast paced production or assembly line type work.

[AR 24-25.]

The ALJ concluded that Plaintiff was unable to perform his past relevant work but could work as a merchandise marker, housekeeper, or mail

sorter, positions that "exist[ed] in significant numbers in the national economy." [AR 34; see AR 33-34.] Accordingly, she found that he did not meet the SSA's definition of disability from the alleged onset date through his DLI. [AR 35.]

Plaintiff raises three issues:

(1) Whether the ALJ erred in not finding that his seizure disorder met Listing 11.02(B).

(2) Whether the ALJ considered all relevant evidence in formulating his RFC.

(3) Whether the ALJ properly evaluated his subjective symptom statements and testimony.

[*See* Dkt. No. 13 at 3-22.]

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citation and internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (same).

It is the ALJ's responsibility to determine credibility and to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). "Where evidence is susceptible to more than one rational interpretation," the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir.

2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[3]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if it is "inconsequential to the ultimate nondisability determination" or, despite the legal error, "if the agency's path may reasonably be discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and internal quotation marks omitted).

## III.   Discussion

### A.   The ALJ Properly Found that Plaintiff's Seizure Disorder Did Not Meet or Equal Listing 11.02(B)

#### 1.   Applicable Law

At step three of the disability-evaluation process, the ALJ must consider whether the claimant's impairments meet or medically equal any of the impairments in the Listings. *See* §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester*, 81 F.3d at 828 (citing § 404.1520(d)).

The claimant has the burden of proving that an impairment meets or equals a Listing. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis

---

[3] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used . . . as the pivotal basis for a legal ruling by a district court").

5

in original). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Id.* (quoting § 404.1526) (emphasis in original). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Under Listing 11.02(B), a plaintiff must be found disabled if he shows that he has had "dyscognitive seizures" at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02(B).

> Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure.

*Id.* § 11.00H(1)(b).

### 2. The ALJ's Decision

The ALJ found that "a review of the medical records and the discussion below demonstrates [Plaintiff's] impairments do not meet the requirements of Listing 11.02." [AR 23.]

### 3. Analysis

The ALJ properly found that Plaintiff's impairments did not meet or equal Listing 11.02(B). First, to meet Listing 11.02(B), Plaintiff's dyscognitive seizures had to have occurred at least once a week for at least three consecutive months despite adherence to prescribed treatment, as he acknowledges. [See Dkt. No. 13 at 3.] He points to no three-month period during which he met this standard. *See Carvalho v. Kijakazi*, No. 2:21-cv-

6

01099 CKD (SS), 2023 WL 4848493, at *6 (E.D. Cal. July 28, 2023) (finding that Plaintiff did "not show[] harmful error with respect to" ALJ's finding that she did not meet Listing 11.02 because she did not show that she had seizures for "at least 3 consecutive months"). He testified at the February 2023 hearing that he had "jerk" seizures about once a week and "sit-down" seizures about once a month [AR 58-59], but he did not indicate how long that had been the case. In May 2020, he reported that he "average[d] 7 sit downs a month, and 15-20 jerks a month." [AR 728.] But again, he did not indicate how long that frequency had persisted. Similarly, he reported in May 2021 that he had "dark like movements 2-3 times a week," but he didn't state how long that had been the case. [AR 710.]

This is significant because there were times when Plaintiff's seizures were less frequent and when he was not adhering to treatment, as the ALJ noted. His seizures were noted to be "under control" in January 2021. [AR 26-27 (citing AR 742).] On November 18, 2021, he reported that his last seizure was a month earlier, as the ALJ noted. [AR 28 (citing AR 1095).] During office visits with a physician's assistant in August and November 2022, he reported "no new seizures" and said his last one had been on October 18, 2021. [AR 1700, 1703.] At the November visit, he reported "occasional" jerk movements, but he didn't clarify how frequent "occasional" meant or state how long they had been occurring. [AR 1703.] Therefore, the ALJ did not err in finding that Plaintiff did not meet the frequency and duration requirements of Listing 11.02(B). *See Carvalho*, 2023 WL 4848493, at *6.

Moreover, even if Plaintiff had shown that his dyscognitive seizures were occurring with the requisite frequency and duration, he hasn't demonstrated that they happened "despite adherence to prescribed treatment," as required by Listing 11.02(B). In May 2021, he went to the

7

emergency room for a seizure and admitted that he had "r[u]n out of" his seizure medication and was not taking his normal dose, as the ALJ noted. [AR 27 (citing AR 710).] And the ALJ correctly noted that during an emergency-room visit for seizures in October 2021, staff observed that he had been "non-compliant" with his seizure medications and had "forgot[ten] to take his [seizure] medications for three days." [Id. (citing AR 882).] At a follow-up visit with neurology the following month, a physician's assistant noted Plaintiff's "[q]uestionable compliance" with seizure medication, as the ALJ observed. [AR 27-28 (citing AR 1096).] Accordingly, the ALJ did not err in finding that Plaintiff failed to show that his seizures occurred "despite adherence to prescribed treatment." *See Melissa M. v. Comm'r Soc. Sec. Admin.*, No. 2:24-cv-00528-JR, 2024 WL 4948851, at *1 (D. Or. Dec. 2, 2024) ("ALJ did not err in finding plaintiff d[i]d not meet Listing 11.02(A) or 11.02(B) [because] even if plaintiff were to sufficiently prove that she me[t] the frequency and duration requirements for either 11.02 listing, she c[ould not] show that she did so while compliant with medical treatment."). Plaintiff makes no argument that his seizure disorder equaled Listing 11.02(B) despite not having met it. For all these reasons, the ALJ did not err in finding that he failed to meet or equal Listing 11.02(B).

        **B.**      **The ALJ Erred in Formulating Plaintiff's RFC**

Plaintiff alleges that the ALJ erred in assessing his RFC by failing to properly consider the medical evidence and opinions concerning his seizure disorder, mental conditions, and hand limitations. [Dkt. No. 13 at 8-16.] Because the ALJ erred in assessing his hand limitations, remand is required.

8

### 1. Applicable Law

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite existing limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination must be based on all the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources. §§ 404.1545, 416.945. The ALJ is responsible for translating and incorporating supported medical evidence into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (as amended). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford*, 950 F.3d at 1149. When this evidence is "susceptible to more than one rational interpretation," the ALJ's reasonable evaluation should be upheld. *Ryan*, 528 F.3d at 1198.

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. §§ 404.1520c(a) & (b), 416.920c(a) & (b). The factors for evaluating their persuasiveness include supportability, consistency, relationship with the claimant (including length of treatment, frequency of examinations, purpose of treatment, extent of treatment, and existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements"). §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors when determining persuasiveness. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir.

9

2022).  Supportability and consistency are explained in the regulations:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
> §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.

§§ 404.1520c(b)(2), 416.920c(b)(2).

### 2. Medical evidence and opinions concerning Plaintiff's impairments

#### a) Seizure disorder

Plaintiff complains that the ALJ failed to properly consider medical evidence documenting his seizure disorder, but he makes no additional argument and cites no additional evidence; he simply references his argument that his seizure disorder met Listing 11.02(B).  [See Dkt. No. 13 at 9.]  As noted, the ALJ properly considered the evidence of Plaintiff's seizure disorder and found it to be a severe impairment.  But the ALJ also correctly noted that Plaintiff frequently failed to comply with his medication schedule.  [AR 27 (citing AR 710, 882, 1096).]  And when he did comply, his seizure disorder was well controlled, as the ALJ noted.  [Id. (citing AR 742); AR 28 (citing AR 1095, 1700, 1703).]  Moreover, the ALJ accounted for Plaintiff's seizure disorder by limiting him to "no climbing ladders, ropes or scaffolds" and "[n]o work at unprotected heights or on dangerous moving machinery or other hazards such as open bodies of water."  [AR 24.]  Plaintiff neither addresses the limitations

10

the ALJ assessed nor identifies what additional limitations should have been included or what evidence would support such limitations. See Burch, 400 F.3d at 683-84 (ALJ adequately considered plaintiff's impairment in RFC determination because plaintiff did not "point[] to any evidence of functional limitations due to [impairment] which would have impacted the ALJ's analysis" and "there [was] no evidence . . . of any functional limitations as a result of her [impairment] that the ALJ failed to consider"). Therefore, the ALJ did not err in assessing Plaintiff's seizure disorder.

### b) Hand limitations

Plaintiff argues that the ALJ did not adequately account for his hand limitations. [Dkt. No. 13 at 8-9, 14-15.] Specifically, he contends that the ALJ's finding that his hand impairments were "not significantly limiting his ability to perform basic work activities[] is clearly not consistent with or supported by the medical evidence of record." [Id. at 14 (citation omitted).] Indeed, for the reasons discussed below, the ALJ erred in not finding his hand impairments to be severe, and the error was not harmless.

The ALJ noted that the medical records showed "complaints of hand pain" and "notes of" carpal-tunnel syndrome, osteoarthritis, and tendonitis. [AR 20-21.] For example, at an emergency-room visit in December 2021, Plaintiff complained of bilateral hand pain for a week. [AR 21 (citing AR 1709); see AR 1708.] He continued to complain of hand pain, and in February 2022, he showed a positive Tinel's sign and tenderness, with decreased sensation of all five digits but otherwise intact motor strength and sensation of the bilateral upper extremities. [AR 21 (citing AR 1670).] An EMG study showed "moderate to severe bilateral median neuropathy at the bilateral wrists" [id. (citing AR 1679)], "as is typically seen in carpal tunnel syndrome"

[AR 1679].

In July 2022, Plaintiff went to the emergency room complaining of hand pain, and examination showed moderate tenderness and limited range of motion in the left hand. [AR 21 (citing AR 1750).] At an emergency-room visit in August 2022, he showed swelling and a positive Phalen's test but was negative for limited range of motion. [*Id.* (citing AR 1760).] And in October 2022, he went to the emergency room complaining of left-hand pain for two weeks and reported that he was getting surgery for carpal-tunnel syndrome. [Id. (citing AR 1764).] An examination showed moderate wrist tenderness but negative left-wrist swelling, deformity, and limited range of motion. [*Id.* (citing AR 1767).] In January 2023, he underwent left carpal-tunnel release. [Id. (citing AR 1695).] The following month, he complained that pain from carpal-tunnel syndrome "keeps him awake sometimes." [AR 1848.]

The ALJ found that Plaintiff's alleged hand impairment didn't significantly limit his ability to perform basic work activities. [AR 20.] But she nonetheless — and contradictorily, given that none of the other impairments she found to be severe would cause manipulative limitations — formulated an RFC limiting him to pushing or pulling 20 pounds occasionally and 10 pounds frequently and performing "frequent fine and gross manipulation bilaterally." [AR 24.] Those RFC findings are incompatible with her finding Plaintiff's hand impairment nonsevere. The nonsevere finding was also inconsistent with the significant medical findings and treatment for carpal-tunnel syndrome — including surgery — in the record. [See AR 1670, 1679, 1695, 1708-09, 1750, 1760, 1767, 1774, 1848.] Therefore, the ALJ erred in finding that his carpal-tunnel syndrome wasn't a severe impairment.

True, "an error at step two may be considered harmless where, as here,

12

the ALJ moves to the next step in the analysis" and the decision reflects that the ALJ adequately considered any limitations posed by the impairment at step four or five. *Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021) (unpublished). But that is not the case here. Although the ALJ discussed Plaintiff's complaints of hand pain at step two [see AR 21], she did not analyze them in any detail at step four or five [see AR 24-34]. In particular, the ALJ did not explain what evidence supported the finding that he could frequently perform "fine and gross manipulation bilaterally" [AR 24] despite findings of "decreased sensation of all five digits" [AR 21 (citing AR 1670)] and "moderate to severe bilateral median neuropathy at the bilateral wrists" [id. (citing AR 1679)], which ultimately required surgical intervention in January 2023 [see AR 1695]. Because the ALJ failed to explain the inconsistency, it is unclear how she would have weighed the other evidence of Plaintiff's hand impairment if she had analyzed it as severe. Accordingly, the Court can't trust the accuracy of the ALJ's assessment of his RFC. *See Perez v. Astrue*, 250 F. App'x 774, 776 (9th Cir. 2007) (remanding in part because ALJ's findings were "internally inconsistent" and thus "not supported by substantial evidence"); *Gutierrez v. Colvin*, No. ED CV 15-889-E, 2016 WL 67680, at *1 n.1 (C.D. Cal. Jan. 4, 2016) (finding that remand was appropriate because ALJ's decision contained "internally inconsistent" statements concerning whether plaintiff had "severe medically determinable hearing impairment"); *Bridges v. Colvin*, No. CV 13-5618-E., 2014 WL 1370369, at *3 (C.D. Cal. Apr. 8, 2014) ("Material ambiguities and inconsistencies in an ALJ's decision generally warrant remand.") (citation omitted).

### C.         Remand for Further Proceedings Is Appropriate

Plaintiff also challenges the ALJ's evaluation of the mental-health evidence and of his subjective symptom statements. [Dkt. No. 13 at 15-22.] The ALJ should reevaluate those once she has properly considered Plaintiff's severe hand limitation and how that severity might have impacted his mental health and symptom statements, so the Court does not address those arguments. *See Negrette v. Astrue*, No. EDCV 08-0737 RNB., 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and lay-witness testimony). On remand, the ALJ should reassess Plaintiff's RFC and his hand impairment, considering when the hand impairment became severe. For the DIB claim, the ALJ should assess the RFC only up to his date last insured of September 30, 2022. For the SSI claim, she must assess whether his surgery resolved his hand issues.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (as amended). Indeed, Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (as amended Feb. 5, 2016) (citations omitted).

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential

14

factual issues have been resolved.

*Id.* at 407 (citation omitted).

The issues concerning the assessment of Plaintiff's severe hand impairment and his mental health, his subjective symptom statements and testimony, and the RFC "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015) (as amended); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate when "there is conflicting evidence, and not all essential factual issues have been resolved" (citation omitted)); *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same when record does not clearly demonstrate claimant is disabled within meaning of SSA). If the ALJ again finds no additional hand limitations, she can then provide an adequate discussion of the medical evidence justifying her doing so. Accordingly, the appropriate remedy is a remand for further administrative proceedings.

**IV. Order**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered REVERSING the Acting Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this memorandum decision. A separate judgment will issue.

IT IS SO ORDERED.

Dated: March 17, 2025          _____
                               PATRICIA DONAHUE
                               UNITED STATES MAGISTRATE JUDGE

15